IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT LEE POLLARD, JR.,
 Petitioner,

vs.             Case No.: 3:06cv345/LAC/EMT

JAMES R. McDONOUGH,
 Respondent.
_____/

## REPORT AND RECOMMENDATION

  This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (*see* Doc. 7, attach. 1 (hereafter "Doc. 1")). Respondent filed an answer and relevant portions of the state court record (Doc. 24). Petitioner filed a reply (Doc. 33).

  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I. BACKGROUND AND PROCEDURAL HISTORY

  The procedural background of this case is undisputed by the parties and established by the state court record. Following a jury trial in the Circuit Court for Escambia County, Florida, on April 3, 2003, Petitioner was found guilty of one count of sexual battery with great force and one count of aggravated battery with great bodily harm or with a deadly weapon (Doc. 24, Ex. B at 18–19, Ex. C at 281). Petitioner was acquitted of one count of burglary of a dwelling while armed (Doc. 24, Ex. B at 18, Ex. C at 281). The same day, the trial court adjudicated Petitioner guilty of sexual

battery[1] and aggravated battery and sentenced him to a term of fifteen (15) years of incarceration with pre-sentence jail credit of 346 days on the sexual battery count and a consecutive term of fifteen years on the aggravated battery count (Doc. 24, Ex. B at 26–32, Ex. C at 287). Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (First DCA). Petitioner's appellate counsel filed a brief asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court, in accordance with Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (Doc. 24, Ex. E). Petitioner filed a pro se initial brief (*id.*, Ex. F). The appellate court affirmed the conviction and sentence per curiam without written opinion on July 6, 2004 (*id.*, Ex. H). Pollard v. State, 877 So. 2d 726 (Fla. 1st DCA July 6, 2004) (Table).

On August 20, 2004, Petitioner filed a Motion for Mitigation of Sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Doc. 24, Ex. I). The trial court denied the motion on October 15, 2004 (*id.*, Ex. J).

On November 12, 2004, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 24, Ex. K). On February 11, 2005, the trial court dismissed the motion without prejudice on the ground that it failed to meet the pleading requirements of Rule 3.850(c) (*id.*, Ex. L).

On February 16, 2005, Petitioner filed a second Rule 3.850 motion (Doc. 24, Ex. M at 1–6). The trial court denied the motion, without an evidentiary hearing, on May 31, 2005 (*id.* at 25–55). Petitioner appealed the decision to the First DCA. The appellate court affirmed the decision per curiam without written opinion on October 25, 2005, with the mandate issuing December 30, 2005 (*id.*, Exs. N, P). Pollard v. State, 916 So. 2d 794 (Fla. 1st DCA Oct. 25, 2005).

Petitioner filed the instant habeas action on July 28, 2006 (Doc. 1 at 6). Respondent concedes that the petition was timely filed (Doc. 24 at 5).

II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on

---

[1] Apparently due to a "misunderstanding," Petitioner was adjudicated guilty of sexual battery without force, a violation of § 794.011(5) (*see* Doc. 24, Ex. B at 26, Ex. M at 26).

Case No: 3:06cv345/LAC/EMT

the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test in habeas cases was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the

federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned

on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, the court will review Petitioner's claim.

III. PETITIONER'S CLAIM

> Ground one: "Deprivation of rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution through a violation of due process of law and double jeopardy"

(Doc. 1 at 6a). Petitioner claims that his convictions for sexual battery and aggravated battery violate the Double Jeopardy Clause because the verdicts directly conflict with one another and yet are based on the same criminal act (*id*. at 6a–6c). He contends that the jury found him guilty as charged of sexual battery with use of a deadly weapon or with physical force likely to cause serious personal injury, in violation of Florida Statutes section 794.011(3), but they specifically found that he did not carry a deadly weapon; thus, when the jury found him guilty of aggravated battery with great bodily harm or with a deadly weapon, they necessarily concluded that the battery occurred with great bodily harm instead of with a deadly weapon (*id*. at 6b–6c). Petitioner further argues that the judgment of conviction shows that he was adjudicated guilty of section 794.011(5), sexual battery <u>without</u> the use of physical force or violence likely to cause serious personal injury, and that adjudication directly contradicts the jury's finding that he was guilty of aggravated battery with great bodily harm based upon the same criminal act (*id*. at 6b–6c). Petitioner contends that the inconsistent verdicts for the same criminal act violates due process and the prohibition on double jeopardy (*id*. at 6a–6c).

Respondent contends that Petitioner failed to exhaust his claims in the state courts because he should have raised them on direct appeal of his conviction but did not (Doc. 24 at 7). Furthermore, although Petitioner mentioned double jeopardy in his Rule 3.850 motion, he did not cite the Constitution or any federal case law, he did not mention due process, and he did nothing to alert the state court that he was relying on federal double jeopardy provisions rather than state provisions (*id*. at 8). Therefore, his claims were never fairly presented to the state courts (*id*.). Respondent further contends that Petitioner may not return to state court to adjudicate his claims; therefore, the claims are procedurally barred from federal review (*id*.).

In response, Petitioner claims that he fairly presented his double jeopardy claim in his motion for rehearing on his Rule 3.850 motion in which he referred to the double jeopardy violation and the Fifth Amendment (Doc. 33 at 3–4). He concedes that he did not describe the constitutional error in detail but argues he apprised the court of the double jeopardy violation (*id*.).

Regardless of whether Petitioner exhausted his due process and double jeopardy claims in the state courts, his claims are without merit.[3] The Double Jeopardy Clause protects against multiple punishments for the same offense. Missouri v. Hunter, 459 U.S. 359, 365–66, 103 S.Ct. 673, 678, 74 L. Ed. 2d 535 (1983). This protection does not extend to those offenses for which the legislature clearly intended to prescribe cumulative punishments. Williams v. Singletary, 78 F.3d 1510, 1512 (11th Cir. 1996). "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." *Id.* (quoting Garrett v. U.S., 471 U.S. 773, 778, 105 S. Ct. 2407, 2411, 85 L. Ed. 2d 764 (1985)). This intention must be clearly expressed. *Id.* If no clear intention is evident, the provisions are analyzed under the "same elements" test announced in Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.* (quoting United States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993)). Although the court

---

[3]The court may deny an application for writ of habeas corpus on the merits notwithstanding Petitioner's failure to exhaust his state court remedies. 28 U.S.C. § 2254(b)(2).

will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of the state's own statutes. Tarpley v. Dugger, 841 F.2d 359, 364 (11th Cir. 1988) (citing Hunter, 459 U.S. at 368).

>Florida law provides the following guidance in the construction of its criminal statutes:
>
>(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
>
>. . . .
>
>(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense, and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
>
>(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
>
>1. Offenses which require identical elements of proof.
>
>2. Offenses which are degrees of the same offense as provided by statute.
>
>3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021. Based upon this language, it is clear that the Florida Legislature expressly intended to convict and sentence a defendant for each offense he commits during the course of a single criminal episode, with three exceptions to that rule. Fla. Stat. § 775.021(4)(b). The exceptions adopt the Blockburger test. *See* State v. Weller, 590 So. 2d 923, 925 (1991).

Regarding the third statutory exception, Florida recognizes two separate categories of lesser included offenses, "Category 1" or necessary lesser included offenses and "Category 2" or permissive lesser included offenses. In re the Use by the Trial Courts of the Standard Jury Instructions in Criminal Cases, 431 So. 2d 594, 596 (Fla. 1981), *modified*, 431 So. 2d 599 (Fla. 1981). Category 2 lesser included offenses are different from Category 1 lesser included offenses

because they are not necessarily subsumed into the greater offense. Because a Category 2 or "permissive" lesser included offense has statutory elements that are facially distinct from the greater offense, it can be subsumed into the greater offense only when the charging document and the evidence support the additional facts needed to sustain the charge. Weller, 590 So. 2d at 925 & n.2. Therefore, Category 2 lesser included offenses do not form the basis of a federal double jeopardy violation because the commission of the greater offense does not necessarily entail a conviction of the lesser offense. Weller, 590 So. 2d at 926; State v. Baker, 452 So. 2d 927, 929 (Fla. 1984) (quoted in Williams, 78 F.3d at 1514).

In the instant case, Petitioner was adjudicated guilty of sexual battery, in violation of Florida Statutes section 794.011(5) (Doc. 24, Ex. A at 26). That crime has three statutory elements: (1) the victim was 12 years of age or older, (2) the perpetrator committed an act upon the victim in which his sexual organ penetrated or had union with the victim's vagina, and (3) the act was done without the victim's consent. Fla. Stat. § 794.011(5); Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instructions on Crimes, Chapter 11.3 Sexual Battery—Victim 12 Years of Age or Older (2002). Petitioner was also adjudicated guilty of aggravated battery, in violation of section 784.045. That crime has two statutory elements: (1) the perpetrator intentionally touched or struck the victim against her will, and (2) the perpetrator, in committing the battery, intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement to the victim or used a deadly weapon. Fla. Stat. § 784.045; Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instructions on Crimes, Chapter 8.4 Aggravated Battery (2002).

Initially, aggravated battery is not a Category 1 or Category 2 lesser included offense of sexual battery. *See* Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instructions on Crimes, Schedule of Lesser Included Offenses (2002). Furthermore, analysis of the respective criminal statutes in this case shows the absence of a double jeopardy violation as each offense requires proof of an element that the other does not. The offense of sexual battery requires proof that Petitioner's sexual organ penetrated or had union with the victim's vagina, whereas the offense of aggravated battery requires proof that Petitioner intentionally touched or struck the victim and caused great bodily harm. When one commits sexual battery, one does not necessarily inflict great bodily harm, and when one commits aggravated battery, one does not necessarily commit a

sexual act; thus, one can commit sexual battery without also committing aggravated battery. Accordingly, the charges do not become the same offense under the Blockburger test, and the Double Jeopardy Clause was not violated. *See* Bradham v. State, 657 So.2d 40, 41 (Fla. 1st DCA (1995)) (rejecting claim that conviction for sexual battery and aggravated battery violated double jeopardy because sexual battery requires sexual act but aggravated battery does not, and aggravated battery requires proof of actual infliction of great bodily harm, which is not an element of sexual battery).

Moreover, the evidence at trial clearly shows that Petitioner committed a distinct act of aggravated battery separate from the sexual battery, even though the acts occurred during the same criminal episode. The evidence at trial is summarized as follows. The victim testified that Petitioner was her ex-boyfriend, and they had a child together, but the baby died (Doc. 24, Ex. C at 92, 94, 99). She testified that she ended her relationship with Petitioner three or four months before April 20, 2002, the date the instant offenses occurred (*id*. at 94, 105–06, 127). Regarding the evening of April 20, the victim testified that she arrived at her residence at 4250 Erress Boulevard at about 1:00 a.m., after she had worked until 11:00 p.m. the night before and stopped for something to eat (*id.* at 94–96). She went to the hallway bathroom, and when she came out and walked toward the master bedroom, she met Petitioner (*id.* at 96–97). She said, "You broke in here. I'm gonna call the police." (*id.* at 98). Petitioner began hitting her in the face, eyes, mouth, nose and jaw (*id.*). Petitioner told her that he had spoken to their deceased baby and told the baby that they were going to join her (*id*. at 99). He asked the victim if she wanted to know how he was going to kill her (*id.*). The victim testified that Petitioner had a knife with a brown handle in his hand and was waving it around, saying he was going to kill her with the knife (*id*. at 100–01). She testified that Petitioner then forced her on the bed, put the knife to her throat, cut her on the arm with the knife, and then put the knife on the dresser (*id.* at 99–101). Petitioner then raped her by penetrating her vagina with his penis (*id*. at 101). The victim testified that after Petitioner ejaculated, she vomited in the trash can (*id.* at 102–03). She then got up and dressed (*id*.). The victim testified that her mouth was bleeding, and Petitioner had broken one of her teeth (*id*). She told Petitioner she needed to wash out her mouth, and Petitioner responded that she did not have to because he was going to kill her and himself (*id*. at 103). The victim told Petitioner that she left items in her car and needed to get them,

but he said she could not leave the house because she would scream (*id.* at 103–04, 117). The victim then asked Petitioner to get the items, but he refused, saying that she would then lock him out of the house (*id.* at 104). Finally, Petitioner agreed to accompany her outside to her car (*id.*). Petitioner held her hand with one of his hands, and held the knife in the other (*id.*). The victim testified that as she was retrieving items from her car, she saw a police car and flagged down the officer (*id.*). She had not previously been able to call the police because the phone cords had been ripped from the walls (*id.*). The victim testified that Petitioner did not have permission to be on the property (*id.* at 105). On cross-examination, she admitted to previously having driven her car over Petitioner's foot and having hit him with a baseball bat, albeit in self defense (*id.* at 106, 108).

Deputy Harlow testified that he was on routine patrol when the victim flagged down his patrol car at 4250 Erress Boulevard (*id.* at 51–53) The officer testified that the victim's shirt was torn and her hair was mussed (*id.* at 54). The victim told him that her ex-boyfriend was at her house trying to hurt her (*id.*). Deputy Harlow testified that he exited his car and made contact with a black male who was standing next to a fence (*id.* at 54–55). The officer shined his flashlight on the man and asked that the man come talk to him, but the man began walking toward the residence (*id.* at 55). Deputy Harlow walked toward the man and told him to stop, and the man turned, threw his hands down, and angrily yelled, "What?" (*id.* at 56). Harlow told the man he wanted to speak with him, but the man turned and continued inside the house (*id.*). Deputy Harlow went to the front door and commanded the man to come out, but there was no response (*id.* at 57). After about 30 seconds, Deputy Harlow heard the man say, "I'm dying." (*id.* at 57–58). Harlow then entered the residence and found Petitioner lying on the living room floor with a knife in his chest (*id.* at 58). Harlow asked Petitioner if there was anyone else in the residence, and Petitioner said there was not (*id.* at 59). Petitioner told Deputy Harlow that the victim stabbed him (*id.* at 60). Deputy Harlow testified that the victim was not in the residence when he entered it, and he last recalled seeing her standing between her vehicle and his patrol car (*id.*). Harlow also testified that he did not see a knife in Petitioner when he was outside the residence moments before (*id.* at 61).

Deputy Rush testified that she investigated the scene and determined that the suspect's point of entry into the residence was the bathroom window of the master bedroom because there was a screen laying on the ground beneath the window outside and shards of broken glass inside the

bathroom (*id.* at 26–27). In the master bedroom, Deputy Rush observed suspected blood on the bed, pillow, dresser, and wall, and expectorant full of blood in the trash can (*id.* at 31–36). She also observed blood on the rug in the living room (*id.* at 34–35). At trial, photographs of the scene were admitted as evidence, as were photographs of the victim that depicted cuts and bruises on her body and a broken tooth (*id.* at 28, 34, 36–38). Deputy Rush recovered a knife from Petitioner, a blue comforter and pillow from the bedroom, and a rug from the living room, which she turned in to the evidence custodian (*id.* at 39–41).

Ms. Augustus, a Victim Advocate from the Escambia County Sheriff's Office, testified that she met the victim at Baptist Hospital and conducted a rape kit examination (*id.* at 48). Ms. Augustus collected the victim's bra, panties, t-shirt, and a sanitary napkin and turned them in to the evidence custodian (*id.* at 48–49).

Ms. Clanton, a DNA expert with the Florida Department of Law Enforcement (FDLE), testified regarding her examination of the evidence recovered from the victim and the scene. By stipulation, the jury was told that Petitioner's sperm was found on the victim's feminine hygiene pad and in her vagina, the victim's blood was found on the dresser, comforter, and pillow, and Petitioner's blood was found on the knife and the living room rug (*id.* at 89–90).

Ms. Wallace, a microanalyst with the FDLE, testified over objection by the defense that she examined the victim's bra and determined that the fabric contained certain tears and the metal hooks contained certain bends which were not consistent with normal wear and were consistent with the damage which might occur had the bra been pulled from the front (*id.* at 151, 157–64).

The victim was recalled and testified that Petitioner took her bra off (*id*. at 136).

Petitioner testified that he did not rape or assault the victim. He testified that he entered the home by the front door, not the bathroom window, with the victim's consent before she arrived home (*id.* at 183). He testified that he had his own key to the residence (*id.*). Petitioner testified that he and the victim had consensual sex, but when he attempted to leave for work, she flew into a rage and attacked him (*id.*). Petitioner testified that he slapped the victim once to defend himself, and his action caused the victim to collide with the dresser (*id.* at 190, 192). He testified that the victim spit some blood into the trash can, and he got her a glass of salt water to gargle (*id.* at 192). When the victim mentioned she had food in her car, he decided to stay long enough to eat, so he followed

her outside to get the food and, at that point, saw her contact Deputy Harlow (*id.* at 193–94). Petitioner testified that he believed that the victim would make up a story to convince the officer to arrest him, so he returned to the residence to get his keys and jacket when, suddenly, he felt a pain in his chest and realized someone had stabbed him with a knife (*id.* at 195). Petitioner testified that he never saw who stabbed him (*id.*).

This evidence shows that the sexual battery and the aggravated assault were separate and distinct acts: Petitioner beat the victim and then sexually abused her. *See* Robinson v. State, 575 So. 2d 699, 704 (Fla. 1st DCA (1991) (rejecting argument that convictions for sexual battery and aggravated battery violated double jeopardy where evidence showed that the sexual battery and the aggravated battery were separate and distinct acts: defendant sexually abused and then beat the victim). Therefore, Petitioner's convictions for sexual battery and aggravated battery did not constituted a double jeopardy violation.

To the extent Petitioner argues that his convictions violated due process because his conviction for sexual battery without great bodily was inconsistent with his conviction for aggravated battery with great bodily harm, his claim is likewise without merit. As recognized by the Eleventh Circuit, a long line of Supreme Court precedent provides that "inconsistent jury verdicts among multiple defendants tried together on essentially the same evidence do not provide grounds for overturning an otherwise valid jury verdict which has adequate evidentiary support." United States v. Andrews, 850 F.2d 1557, 1561 (11th Cir. 1988) (citing Dunn v. United States, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932); United States v. Dotterweich, 320 U.S. 277, 64 S. Ct. 134, 88 L. Ed. 48 (1943); United States v. Powell, 469 U.S. 57, 63, 105 S. Ct. 471, 475, 83 L. Ed. 2d 461 (1984)). The Eleventh Circuit has held that this principle applies with respect to inconsistency between verdicts on separate charges against one defendant. United States v. Andrews, 850 F.2d 1557, 1561 (11th Cir. 1988) (citing Harris v. Rivera, 454 U.S. 339, 345, 102 S. Ct. 460, 464, 70 L. Ed. 2d 530 (1981) (citations omitted)). Thus, inconsistency between verdicts, of itself, is not a sufficient reason for setting aside a verdict. *Id.* Indeed, in Powell, the Supreme Court reaffirmed that "there is no reason to vacate [a criminal defendant's] conviction merely because the verdicts cannot rationally be reconciled." 469 U.S. at 69. The Court stated, "where truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict

shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" *Id.* at 64 (quoting Dunn, 284 U.S. at 393). Thus, a defendant's acquittal on one count is irrelevant to the determination of whether the evidence supported his conviction on other counts. United States v. Veal, 153 F.3d 1233, 1253 (11th Cir. 1998) (citing United States v. Church, 955 F.2d 688, 695 (11th Cir. 1992) (recognizing that inconsistent verdicts do not defeat a defendant's conviction)); *see also* United States v. Wright, 63 F.3d 1067, 1074 (11th Cir. 1995) (inconsistent verdicts, whether provided by a jury or a judge, are not subject to reversal merely because they are inconsistent).

In the instant case, the state court record shows that Petitioner was charged in Count 1 with sexual battery with use of a deadly weapon or use of actual physical force likely to cause serious personal injury, in violation of section 794.011(3) (Doc. 24, Ex. A at 3). The jury found him guilty of sexual battery with a deadly weapon as charged, but specifically found that he did not carry the deadly weapon during the commission of the offense (*id*. at 18); thus, the jury necessarily found that Petitioner was guilty of sexual battery with use of physical force likely to cause serious personal injury. This finding was not inconsistent with their finding of guilt on Count 3, aggravated battery with great bodily harm or with a deadly weapon (*id*. at 19). The fact that the trial judge adjudicated Petitioner guilty of the crime of sexual battery without physical force likely to cause serious personal injury, a violation of 794.011(5), does not render the jury's verdicts on the two counts inconsistent or a violation of due process. Furthermore, even if the sexual battery occurred without physical force likely to cause serious injury, the fact that Petitioner beat the victim prior to committing the sexual battery defeats his claim that the adjudications of guilt were inconsistent.

Finally, to the extent Petitioner's claim is liberally construed as including a claim of insufficiency of the evidence, his claim is without merit. As an issue of federal law, Petitioner's claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict. In determining whether Petitioner's conviction was obtained with constitutionally infirm evidence, reference must be made to the evidence needed to convict under State law. Jackson v. Virginia, 443 U.S. 307, 324 & n.16, 99 S. Ct. 2781, 2792 n.16, 61 L. Ed. 2d 560 (1979). To satisfy the constitutional requirement of due process during trial, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime

charged against the defendant.  In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970).  When reviewing a claim of insufficient evidence, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt but "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319 (citation omitted); *see also* Bishop v. Kelso, 914 F.2d 1468, 1470 (11th Cir. 1990). The court should not reweigh the evidence but should view it in the light most favorable to the jury's verdict.  Jackson, 443 U.S. at 319; Veal, 153 F.3d at 1253; Cosby v. Jones, 682 F.2d 1373, 1382 (11th Cir. 1982).  Because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant.  Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir. 1987).  The test under Jackson is a limited one, and "[i]t is not required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt."  Wilcox, 813 F.2d at 1143.  "The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief." *Id.*; Cosby, 682 F.2d at 1383 n.21.

In the instant case, the evidence, viewed in a light most favorable to the State, is sufficient to permit a rational juror to conclude beyond a reasonable doubt that Petitioner committed an act upon the victim in which his sexual organ penetrated or had union with the victim's vagina, and the act was done without the victim's consent.  Additionally, a rational juror could conclude beyond a reasonable doubt that Petitioner intentionally struck the victim against her will, and in doing so intentionally caused great bodily harm or permanent disfigurement to the victim or used a deadly weapon.  Since a rational trier of fact could have found guilt beyond a reasonable doubt as to each of these counts, this court concludes that Petitioner failed to establish a due process violation.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 14th day of June 2007.

        /s/ *Elizabeth M. Timothy*
        **ELIZABETH M. TIMOTHY**
        **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** <u>United States v. Roberts</u>**, 858 F.2d 698, 701 (11th Cir. 1988).**